978 F.2d 716
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Floyd J. FITCH, Defendant-Appellant.
Mary K. FITCH, Plaintiff-Appellant,
v.
UNITED STATES of America; Joan Rockwood; Corey Angel;
Century 21 Amber Realty; State of California,
Defendants-Appellees.
 Nos. 91-55259, 91-55462.
 United States Court of Appeals, Ninth Circuit.
 Submitted July 31, 1992.*
Decided Oct. 30, 1992.
 
 Before: KILKENNY, GOODWIN and FERGUSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 In these consolidated appeals, Floyd J. Fitch ("Floyd") and his wife, Mary K. Fitch ("Mary"), separately challenge the foreclosure sales of their property for unpaid taxes. We reject their arguments and affirm both judgments.
 
 FACTS AND PRIOR PROCEEDINGS
 
 3
 As the result of Floyd's refusal to file personal income tax returns for the years 1979 through 1982, and because he filed false W-4 forms in 1982 and 1986, the Internal Revenue Service ("IRS" or "government") assessed back taxes, penalties, and interest against him totalling more than $100,000.00. When the taxes, penalties and interest remained unpaid, the IRS recorded notices of federal tax liens against two parcels of land belonging to the Fitches, viz., one at 17108 Raymond Place, Gardena, California ("Raymond property"), and one at 14519 Purche Avenue, Gardena, California ("Purche property"). Although both parcels of land were originally held by the Fitches as community property, Mary quitclaimed her interest in the Purche property to Floyd in 1984, making him the sole owner thereof.
 
 
 4
 The government later instituted proceedings against Floyd to reduce the federal tax liens to judgment. See United States v. Floyd Fitch, et al., CV-89-2610-AWT. The complaint in that action also named as defendants his wife, Mary, the Fitches' three adult children, Home Savings and Loan Association ("Home Savings"), Serrano Reconveyance Company ("Serrano"), Jefco Investments ("Jefco"), and Gerald and Georgia Rahmeyer, as parties possibly claiming interests in the real property. Following the district court's denial of Floyd's motion to dismiss, stipulated judgments were entered into between the government and the three children, Jefco, and the Rahmeyers. The government also agreed to the entry of stipulated orders for judgment that a lien held by the State of California for unpaid taxes had priority over the government's liens, and the lien held by Home Savings had priority over the government's lien against the Purche property. Defendant Serrano, as trustee of a deed of trust securing a promissory note issued by the Fitches to Home Savings, was also a party to the sipulation in favor of the latter.
 
 
 5
 On August 3, 1989 the government moved for and obtained an entry of default against Mary. Four days later she filed an objection to the request for entry of default, arguing that she had not been properly served with the summons and complaint. Mary effectively waived her objection to the manner of service, however, when she and Floyd filed an answer to the complaint the following week. Moreover, neither in her objection nor in the Fitches' answer did Mary move to set aside the entry of default.
 
 
 6
 On November 17, 1989 the government moved for summary judgment against Floyd. Although he filed something in opposition entitled "Judicial Notice, Revocation of Power of Attorney", Floyd's response failed to address the issues raised by the government in its motion. After a hearing with oral argument, the district court entered an order granting the motion on December 27, 1989. Nine days later the court entered judgment in favor of the government, ruling that Floyd was indebted to the United States in the amount of $107,495.69. As part of its judgment the court ordered the foreclosure and sale of the two parcels of land, with the proceeds therefrom to be applied in satisfaction of the liens.
 
 
 7
 On December 28, 1989 (i.e., the day after it obtained an order granting summary judgment against Floyd), the government applied for entry of default judgment against Mary. Mary neither filed anything in opposition thereto nor appeared at the hearing scheduled for January 8, 1990. The district court entered default judgment against her four days later.[1] In its judgment the court ruled, inter alia, that the Raymond property was jointly owned by Floyd and Mary as community property and was fully subject to Floyd's tax liabilities incurred during his marriage to Mary. On the same day (i.e., January 12, 1990) the court also entered separate orders authorizing the IRS to conduct judicial sales of both the Purche and Raymond properties and to distribute the proceeds in accord with the priorities specified in those orders. The orders further stated that any surplus was to be deposited with the court for later distribution.
 
 
 8
 On January 19, 1990 Floyd filed a notice of appeal from the summary judgment. We dismissed Floyd's appeal for failure to prosecute. See United States v. Floyd Fitch, No. 90-55230 (9th Cir. Dec. 21, 1990). Mary neither signed the notice of appeal nor filed a separate notice of appeal from the default judgment entered against her in that action.
 
 
 9
 On June 11, 1990 the government disposed of the Raymond and Purche properties by judicial sale. Eight days later Floyd filed an objection, but only as to the sale of the Raymond property. Because neither Floyd nor Mary asserted any challenge to the disposition of the Purche property, the district court entered an order confirming that sale on July 18, 1990. Following a hearing on the government's motion to confirm the sale of the Raymond property, the court ruled that Floyd's contentions were meritless and issued an order confirming that sale as well on August 7, 1990. After distributing the sale proceeds, the government deposited the surplus ($120,539.56) with the district court.
 
 
 10
 On September 21, 1990 the government filed a motion to schedule further proceedings for distribution of the surplus. The district court granted the motion, after which the government, the State of California, and the Fitches all filed claims to the surplus. The government's claim for $114,727.84 represented assessed liabilities for unpaid taxes on both Floyd's and Mary's incomes for the years 1983 through 1990, including post-assessment interest. The State of California's claim was for $1,670.89 plus interest, representing the difference between the sum it had received under the original distribution and the amount still owed by Floyd for unpaid state income taxes. The Fitches claimed a total of $741,721.00 (i.e., $450,000.00 claimed by Floyd and $291,721.00 by Mary) on a variety of theories, including (1) they were non-resident alien preamble citizens who had not entered into any contractual relationship with the federal government entitling the latter to tax them under the provisions of the Uniform Commercial Code, (2) the tax proceedings were unlawful because they were actually disguised bankruptcy proceedings, and (3) only a state court had jurisdiction to determine the Fitches' community property rights.
 
 
 11
 The district court conducted a hearing on the various claims to the surplus on January 14, 1991. The court's ruling, embodied in an order filed ten days later, awarded the State of California $1,688.10 plus 54cents per day to the day of payment, the IRS $114,727.84, and the remaining balance to the Fitches. Only Floyd appealed from this final distribution order. See United States v. Floyd J. Fitch, No. 91-55259.
 
 
 12
 In the meantime (i.e., on September 20, 1990) Mary filed an action in California state court against the United States, Corey Angel (buyer of the Raymond and Purche properties), Century 21 Amber Realty (broker for Mr. Angel in his efforts to resell the properties), Joan Rockwood (listing agent for Mr. Angel), and the State of California. Mary's complaint alleged, inter alia, that she had been deprived of property without a judicial determination of her community property rights or her liability for unpaid taxes. In her prayer for relief she sought the return only of the Raymond property and $105 million from the government.
 
 
 13
 The defendants timely removed the case to federal district court, whereupon Mary moved to have it remanded to state court. See Mary K. Fitch v. United States, et al., CV-90-5645-AWT. The district court denied her motion. She renewed the motion, which was also denied, and then sought reconsideration of the second denial, which the district court also denied.
 
 
 14
 On January 4, 1991 the government moved to dismiss or, in the alternative, for summary judgment, arguing that Mary's action was essentially a challenge to the IRS's tax collection efforts and was therefore barred both by the doctrine of sovereign immunity and the Anti-Injunction Act. The government further noted in its motion that, because the matters raised in the complaint had already been determined against Mary in the previous litigation involving her and her husband, her action amounted to nothing more than a collateral attack on the earlier judgment.
 
 
 15
 Mary filed an opposition to the government's motion on January 29, 1991. On February 15, 1991 the district court granted the government's motion for summary judgment and dismissed the action as against it. On March 6, 1991 the court entered summary judgment in favor of the remaining defendants, concluding that res judicata barred the action as against them, and entered final judgment in favor of all defendants later the same day. Mary timely appealed from that final judgment. See Mary K. Fitch v. United States, et al., No. 91-55462.
 
 DISCUSSION
 
 16
 The government argues that, because the district court's judicial sale orders of January 12, 1990 were final decisions from which Floyd timely appealed, the only remaining issue before this court with respect to Floyd's appeal (i.e., No. 91-55259) concerns the propriety vel non of the district court's order distributing the surplus sale proceeds. Although we are inclined to agree with the government's position, we conclude that, regardless whether Floyd is barred from asserting his earlier claims concerning the judicial sale orders, his contentions are meritless in any event. Cf. Clow v. U.S. Dep't of Hous. & Urban Dev., 948 F.2d 614, 616 & n. 2 (9th Cir.1991) (per curiam) (doctrine of hypothetical jurisdiction allows a court to forgo resolution of difficult jurisdictional questions where merits of appeal are insubstantial).
 
 
 17
 Contrary to the Fitches' assertions, the district court had jurisdiction over them and the proceedings. See 26 U.S.C. § 7402; 28 U.S.C. § 1340. Moreover, the record shows that the government complied with the relevant provisions of the Internal Revenue Code giving rise to the liens on the Fitches' property, see 26 U.S.C. §§ 6203, 6321, and correctly reduced those liens to judgment as required by 26 U.S.C. § 7403, both as to the tax years 1979-1982 and for the subsequent years of 1983-1990. Finally, because Mary quitclaimed her interest in the Purche property to Floyd and the Fitches purchased the Raymond property during the course of their marriage to each other, the district court correctly held that both properties were liable for the debts they incurred (viz., unpaid taxes) during the course of their marriage. See Cal.Civ.Code §§ 5110, 5120.110(a); United States v. ITT Consumer Financial Corp., 816 F.2d 487, 491 n. 12 (9th Cir.1987).
 
 
 18
 With respect to Mary's appeal (i.e., No. 91-55462), it is clear that that portion of her action against the government amounts to nothing more than a collateral attack on the previous judgment entered against her and her husband in CV-89-2610-AWT, a decision from which she did not bother to appeal. Having failed to challenge the district court's ruling when she had the opportunity to do so, she cannot be heard now to complain about that judgment. In light of the district court's resolution of those issues revolving around the Fitches' interests in the Purche and Raymond properties in the earlier litigation, the district court did not err by entering summary judgment in favor of the remaining defendants. See Davis & Cox v. Summa Corp., 751 F.2d 1507, 1518 (9th Cir.1985).
 
 
 19
 Because we find no merit to any of the appellants' remaining arguments, the judgments appealed from are hereby
 
 
 20
 AFFIRMED.
 
 
 
 *
 The members of the panel unanimously agree that these appeals are appropriate for submission on the briefs and without oral argument per Fed.R.App.P. 34(a) and 9th Cir.R. 34-4
 
 
 **
 This disposition is not suitable for publication and may not be cited to or by the courts of this Circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Mary filed a motion to reopen the default judgment on October 24, 1990. The district court denied the motion on December 16, 1990, ruling that she had asserted nothing under Fed.R.Civ.P. 60(b) that would justify setting aside the default judgment. See Fed.R.Civ.P. 55(c). Mary did not appeal from that ruling